UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:22-CR-00327 |
| ) | |
| [1] CHESTER GALLAGHER ) | JUDGE TRAUGER |
| [2] HEATHER IDONI ) | |
| [3] CALVIN ZASTROW ) | |
| [4] COLEMAN BOYD ) | |
| [5] CAROLINE DAVIS ) | |
| [6] PAUL VAUGHN ) | |
| [7] DENNIS GREEN ) | |
| [8] EVA EDL ) | |
| [9] EVA ZASTROW ) | |
| [10 JAMES ZASTROW ) | |
| [11 PAUL PLACE ) | |

## JOINT MOTION TO DISMISS INDICTMENT
## AND SUPPORTING MEMORANDUM OF LAW

COMES NOW the defendants Coleman Boyd, Caroline Davis, Eva Edl, Chester Gallagher, Dennis Green, Heather Idoni, Paul Place, Paul Vaughn, Calvin Zastrow, Eva Zastrow and James Zastrow, by and through undersigned counsel, and hereby move the Court pursuant to LCrR 12.01(b), Rule 12(b) of the Federal Rules of Criminal Procedure, and *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 597 U.S. _____ (6/24/2022) to dismiss the Indictment in this case. The defendants submit that the United States Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization* must be applied retroactively to this case; and under *Dobbs'* authority, the Indictment must be dismissed because it results in an unconstitutional application of 18 U.S.C. §§ 241 and 248.

In further support hereof, the defendants would show to the Court the following:

1

## MEMORANDUM OF LAW

## FACTUAL STATEMENT

Starting on or about February 10, 2021, defendants in this matter in coordination with others used social media to promote an anti-abortion event that was to occur in Mt. Juliet, Tennessee on March 5, 2021 (DE 3, pp. 3-4). On March 5, 2021, the defendants traveled to Mt. Juliet, Tennessee to participate in the anti-abortion event (DE 3). The defendants stood outside an abortion clinic in Mt. Juliet Tennessee, used Facebook to livestream broadcast the anti-abortion event, where Defendant Boyd and others asked a female outside the clinic if she was coming to the abortion mill while advising his livestream audience that one person was a mom coming to kill her baby (DE 3, pp. 4-7). Several hours after arriving at the clinic, several of the defendants were arrested by Mt Juliet police and charged with the offense of misdemeanor criminal trespass; those cases were pending in the Wilson County, Tennessee General Sessions and Circuit Courts until January of 2023.

On October 3, 2022, over eighteen months after the events in Mt. Juliet, and approximately three months after the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization, supra* (i.e., on June 24, 2022), the defendants were indicted in federal court on charges of FACE Act violations, and with conspiring to violate the FACE Act (DE 3). The criminal activity alleged in the indictment predated the *Dobbs* decision and appears to be a direct response by the Department of Justice to the Supreme Court's ruling[1].

---

[1] See DOJ press release dated June 24, 2022. https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-supreme-court-ruling-dobbs-v-jackson-women-s

2

Case 3:22-cr-00327   Document 240   Filed 03/08/23   Page 2 of 18 PageID #: 680

# LEGAL ANALYSIS

## Introduction

*Dobbs v. Jackson Women's Health Organization* announced a new rule of substantive Constitutional law, reversing *Roe v. Wade*, and thereby allowing states to once again decide their position on abortion without federal constitutional restriction, whether to enforce laws criminalizing abortion or to allow abortion if a state so chose. In Tennessee, abortion was a crime under state statutes before *Dobbs*, and a trigger law went into effect thirty days after the *Dobbs* ruling that started Tennessee again enforcing its previously adopted statutes that criminalized abortions.

The Indictment in this case alleges that the defendants' conduct was an anti-abortion event. Today, under the new rule of *Dobbs*, that alleged conduct would simply be encouraging people not to violate the Tennessee law. Or in some circumstances, that conduct would be urging government officials to enforce Tennessee law. Given that abortion is no longer a federally protected Constitutional right and is, in fact, a crime in the State of Tennessee, the defendants' conduct, if pursued today, would be recognized as legal. As will be outlined more fully below, a person who acted to enforce a state's criminal prohibition of abortion or advocated for such prohibition before *Dobbs* is protected by retroactive application of the new rule adopted by *Dobbs*.

## Rule 12 Motion Prerequisites and Issue Presented

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b). Courts usually say that a motion to dismiss is capable of determination before trial if it involves questions of law instead of questions of fact on the merits

of criminal liability. *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). Generally, motions are capable of determination before trial if they raise questions of law rather than fact. *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). On a motion to dismiss an indictment, the indictment's factual allegations should be taken as true. A Rule 12 motion is not the appropriate vehicle for addressing the sufficiency of the government's evidence. *United States v. Kettles*, No. 3:16-cr-163-1 (M.D. Tenn. May 15, 2017). However, Rule 12(d) clearly envisions that a district court may make preliminary findings of fact necessary to decide the questions of law presented by a pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. *United States v. Jones*, 542 at 664; *Unites States v. Lundy*, 3:15-cr-146 (M.D. Tenn. 10/11/2016)(citing *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997)).

For purposes of the present motion, the facts as alleged in the Indictment may be taken as true. The issue then presented is purely one of law and is appropriate for determination in a pretrial motion under Rule 12(b). The facts as alleged in the Indictment, taken as true, present an unconstitutional application of 18 U.S.C. §§ 241 and 248 under retroactive application of the new rule of Constitutional law established by *Dobbs v. Jackson Women's Health Organization*.

### *Dobbs* adopted a new rule of substantive Constitutional law.

Whenever the Supreme Court adopts a new rule of *substantive* Constitutional law, it must be applied retroactively to all pending state and federal cases in addition to all future cases. *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Griffith v. Kentucky*, 479 U.S. 314 (1987); *Robinson v. Neil*, 409 U.S. 505 (1973); *United States v. United States Coin & Currency*, 401 U.S. 715 (1971). For purposes of retroactive application, new rules of *substantive* Constitutional law should be distinguished from new Constitutional rules of criminal procedure adopted by the

4

Supreme Court. For the latter, retroactive application depends on a number of considerations that have been established by the Supreme Court since *Linkletter v. Walker*, 381 U.S. 618 (1965). See *United States v. Johnson*, 457 U.S. 537, 542 (1982). See also, *Griffith v. Kentucky*, *supra*.[2] In contrast, when a new rule of *substantive* Constitutional law controls the outcome of a case, it must be applied retroactively to all cases. *Montgomery v. Louisiana*, 577 U.S. at 200.

Rules of substantive Constitutional law are rules that, among other things, "forbid [] criminal punishment of certain primary conduct" and "prohibit [] a certain category of punishment for a class of defendants because of their status or offense." *Montgomery v. Louisiana*, 577 U.S. at 198 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989). The new rule of *Dobbs* encounters both types of prohibition – a byproduct of historical context. For fifty years before *Dobbs,* the nations' law enforcement officers and agents had been applying the Supreme Court's interpretation of the Constitution in *Roe v. Wade*, 410 U.S. 113 (1973).[3] Then, under the *Roe v. Wade* regime (i.e., before *Dobbs*), government officials were forbidden from enforcing criminal sanctions against abortion. Also during that period, the federal government enacted statutes aimed at protecting the new "Constitutional right" to abortion created by *Roe v. Wade*. See, e.g., 18 U.S.C. § 248. When the U.S. Supreme Court overturned *Roe v. Wade* and announced the new rule of *Dobbs*, abortion was no longer recognized or protected as a

---

[2] Among those considerations is whether the appeal seeking retroactive application of a new Constitutional rule of criminal procedure is before the Court on direct review or collateral review. See *Edwards v. Vannoy*, 141 S.Ct. 1547 (2021) for the Court's latest pronouncement in such setting.

[3] *Roe v. Wade* was itself a new rule of substantive Constitutional law. It overturned 185 years of state law that imposed criminal sanctions for abortion; and it was applied retroactively. See, e.g., *United States v. Preiser*, 497 F.2d 337 (2nd Cir. 1974)(criminal conviction and sentence of doctor convicted of abortion before *Roe v. Wade* was vacated by retroactive application of *Roe v. Wade*).

5

Case 3:22-cr-00327    Document 240    Filed 03/08/23    Page 5 of 18 PageID #: 683

"Constitutional right."[4] State and federal governments are now no longer prohibited by Supreme Court interpretation of the Constitution from enforcing criminal laws against abortion, which most states had before *Roe v. Wade*. State officials may now under *Dobbs* carry out legal and Constitutionally appropriate acts to enforce criminal sanctions upon those who commit abortions. It is within the ambit of an individual state's Constitutional authority. "Within the realm of police power the legislature may act in any matter not forbidden by the Constitution expressly or by necessary implication." *McGrew v. Industrial Commission*, 96 Utah 203, 85 P.2d 608 (Utah 1938). Conversely, federal laws previously tailored to protect abortion may no longer be enforced against conduct aimed at stopping or punishing abortions. The result of *Dobbs* forbids federal government punishment of individuals who act to enforce state statutes that criminalize abortion.

Retroactive application of the new rule of *Dobbs* encounters two types of conduct. The first is conduct of a person who committed an abortion before *Dobbs*. The second type is conduct of a person who acted to enforce state criminal prohibition of abortion or advocated for such prohibition before *Dobbs*. Regarding the first type, if a state applying *Dobbs* retroactively were to prosecute one who committed an abortion before *Dobbs* was decided, such prosecution would conflict with the Constitutional prohibition of ex post facto laws.[5] Retroactive application of *Dobbs* to this type conduct is thus Constitutionally restricted. As for the second type, there is no Constitutional conflict with retroactive application of *Dobbs*. A person who acted to enforce a state's criminal prohibition of abortion or advocated for such prohibition before *Dobbs* is

---

[4] "The Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision, including the one on which the defenders of *Roe* and *Casey* now chiefly rely-the Due Process Clause of the Fourteenth Amendment." *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, 597 U.S. _____ (6/24/2022) slip op. at 12.

[5] U. S. Constitution Art. I, Section 10, Clause 5. This conflict was observed as a possibility by Justice Kavanaugh in his concurring opinion in *Dobbs*.

protected by retroactive application of *Dobbs*. A hypothetical example of this second type of conduct might be a Tennessee state official who had before *Dobbs* acted to enforce one of Tennessee's statutes that criminalized abortion.[6] If that state official were now facing federal charges for allegedly violating a federal or Constitutional right of another person to access abortion before *Dobbs*, retroactive application of the new rule of *Dobbs* would forbid the federal government from prosecuting that state official. There is no Constitutional right to abortion under retroactive application of *Dobbs*. Under the new rule, state officials may act to punish those who commit abortion and their accomplices. Applying the same analysis to a private person who is accused for pre-*Dobbs* conduct of interfering with another person's right to abortion, retroactive application of the new rule of *Dobbs* forbids the federal government from prosecuting that person. A private person may aid criminal enforcement against abortion by state officials or petition state officials to act to criminally punish abortions.

Such dual application encountered by new rules of substantive Constitutional law was observed and explained by the Supreme Court in *Marks v. United States*, 430 U.S. 188 (1977). The facts underlying that case set the stage for such dual application. Stanley Marks had been charged with violating federal statutes for allegedly transporting and conspiring to transport obscene materials in interstate commerce. The acts allegedly took place in February 1973. Marks

---

[6] See, e.g., Tennessee's fetal heartbeat law, passed by Tennessee General Assembly in House Bill 2263/Senate Bill 2196 on June 19, 2020, codified at Tennessee Code Ann. §§ 39-15-216 and 39-15-217. There was a period of time when Tennessee officials could have taken steps to arrest and prosecute a person for abortion that violated Tennessee's fetal heartbeat law between June 19, 2020 and June 24, 2022 (the date of the Dobbs decision). Enforcement of the law was enjoined by preliminary injunction on July 24, 2020. See *Memphis Center. for Reprod. Health v. Slatery*, No. 3:20-CV-00501 (M.D. Tenn. 2020), upheld on initial appeal on September 10, 2021 in. *Memphis Center. for Reprod. Health v. Slatery*, 14 F.4th 409 (6th Cir. 2021), but on February 2, 2022, the Court of Appeals stayed part of the district court's injunction (thus allowing enforcement to proceed), and postponed hearing the matter until after the Supreme Court issued its then-awaited decision in *Dobbs v. Jackson Women's Health Organization*. See *Memphis Center. for Reprod. Health v. Slatery*, 24 F.4th 1069 (6th Cir. 2022).

7

was tried and convicted in October 1973. His conviction was affirmed on appeal to the Sixth Circuit. *United States v. Marks*, 520 F.2d 913 (6th Cir. 1975). He appealed to the Supreme Court. During the period between Marks' alleged criminal activity and his trial in federal court, the Supreme Court decided *Miller v. California*, 413 U.S. 15 (1973). In *Miller v. California*, the Supreme Court announced a new rule of substantive Constitutional law establishing standards to distinguish pornography that is protected by the First Amendment from pornography that is "obscene," which the *Miller* court held to be not Constitutionally protected. *Marks v. United States*, 430 U.S. at 189. In Marks' appeal, the Supreme Court pointed out that the new rule of *Miller v. California* was to be retroactively applied. 430 U.S. at 190. Applying the new rule of *Miller* to Stanley Mark's case, the Supreme Court held that the retroactive application had two parts, with both applicable but one part restricted. Retroactive application was restricted wherever it would have the effect of an *ex post facto* law. Marks argued that he was entitled to the benefit of the pre-*Miller* law, as his conduct was legal under the pre-*Miller* standards, and application of the new rule of *Miller* to his conduct would have the effect of an *ex post facto* law. The Supreme Court agreed and sent the case back to the district court to give the defendant jury instructions in accord with the pre-*Miller* law. At the same time, the Court pointed out that the retroactive application of *Miller* was required wherever any Constitutional principle announced in *Miller* would serve to benefit Marks in his new trial. 430 U.S. at 196-97 (citing *Hamling v. United States*, 418 U.S. 87, 102 (1974).

The reasoning of *Miller* is applicable to the defendants in the instant case. The new rule of *Dobbs* must be applied retroactively to the conduct the defendants in this case; the *ex post facto* law restriction is not of concern, because the instant case does not involve charges against anyone accused of abortion before *Dobbs* was decided.

**Retroactive application of *Dobbs* to the instant case.**

The allegations of the facts presented in the Indictment demonstrate the type of conduct involved in this case is protected by retroactive application *Dobbs*. The Indictment makes the following allegations of fact:

¶ 1     Carafem Health Center ("Clinic") was a <u>provider of abortions</u> located in Mt. Juliet, in the Middle District of Tennessee.

¶ 9     Gallagher utilized social media to promote anti-abortion events.

¶ 13    Boyd posted, "Lord willing, our family will be doing a Facebook live of some ministry activities ...."

¶ 14    Boyd stood in the hallway outside the Clinic suite and used his Facebook account to create a livestream.

¶ 19    Boyd asked Patient A if she was "Trying to come to <u>the abortion mill</u>?"

¶ 19    Boyd's child walked up to Patient A and asked her and her companion if they were "looking for <u>the abortion clinic</u>?"

¶ 19    Boyd told his livestream audience that Patient A was a "mom coming to kill her baby."

¶ 21    Gallagher used his Facebook account to post a livestream video.

¶ 21    Gallagher stated that rescuers present there to "rescue families from this place of destruction."

¶ 27    Green explained to his Facebook livestream audience that he "hoped to stop as many murderous appointments as we can."

The Indictment thus alleges clearly that abortion was the subject of the defendants' cooperation with one another and the reason the defendants were exercising their rights to speak, assemble, publicize as press, and petition the government. The defendants were not aiming the exercise of their rights at any form of legitimate reproductive health services. Their aim was against abortion only, which was and is a crime under Tennessee law. As a result, the Indictment itself shows that the defendants did not conspire or act to threaten or intimidate, etc. any person in the exercise or

9

enjoyment of a right secured by the laws of the United States, because after *Dobbs,* abortion is not a right secured by the laws of the United States. The facts alleged in Indictment show that the defendants and all those with whom they are alleged to have cooperated were exercising their Constitutional rights of free speech, assembly, and freedom of the press for the purposes of advocating opposition to abortion and petitioning the State government of Tennessee to enforce criminal sanctions against abortion.

The Indictment charges seven of the eleven defendants with a violation 18 U.S.C. § 241[7]. That is a conspiracy to injure, etc. "patients and employees of the Clinic in the free exercise and enjoyment of the rights and privileges secured to the by the laws of the United States." However, following the *Dobbs* decision, access to medical services for abortion is not a right secured by the Constitution or laws of the United States. And the Indictment allegations make clear that the defendants' work was to oppose abortion, not any legitimate health care or any right or privilege secured by the Constitution or laws of the United States. Therefore, retroactive application of *Dobbs* prevents treatment of the defendants' conduct as a criminal conspiracy under 18 U.S.C. § 241.

The distinction between an agreement to pursue a legitimate objective and an agreement to pursue a criminal objective is paramount in proving a criminal conspiracy charge. Criminal conspiracy is the agreement to join a common scheme to commit an *unlawful* goal. Without an agreement to commit an *unlawful* goal, there is no criminal conspiracy. See *United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018) (citing *Monsanto Co., v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 754 (1984). See also, *U.S. v. Ching Tang Lo*, 447 F.3d 1212 (9th Cir. 2006)(The intent necessary to commit the underlying substantive offense is an essential element of a criminal

---

[7] Defendants Gallagher, Idoni, Calvin Zastrow, Boyd, Davis, Vaughn and Green are all prosecuted in the conspiracy count alleged in Count One.

conspiracy.); *U.S. v. Green*, 548 F.2d 1261 (6th Cir. 1977) citing *U.S. v. Tyler*, 505 F.2d 1329 (5th Cir. 1975)(Essential element of a conspiracy charge is an intent to agree to do a wrongful act. Absent a showing of this intent, one may not be convicted of conspiracy.); *Securities and Exchange Commission v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974)(same). In *Monsanto*, the Supreme Court emphasized the importance of this distinction. An agreement to cooperate in a legal act is distinguishable from an agreement to commit a criminal act. Permitting an agreement to commit an illegal act to be inferred from legal acts could deter or penalize perfectly legitimate, even Constitutionally protected conduct. 465 U.S. at 763. *Accord Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87 (2nd Cir. 2018). Conspirators do not enter into an agreement by happenstance. Because an agreement is the essential element of conspiracy, an agreement to commit a crime cannot be lightly inferred. Each party must have intended to enter into the agreement, and the schemers must have had a common intent to commit an unlawful act. *Ganji*, 880 F.3d at 767.

The § 241 conspiracy charges suffer an additional defect. In *Bray v. Alexandria Women Health Clinic*, 506 U.S. 263 (1993), the Supreme Court held that the federal right to abortion is not protected by federal law against a purely private conspiracy (i.e., one not involving state action by state officials). The Court further held that where private-person defendants conspired to deprive other persons of abortions and the conduct of the alleged conspirators had an incidental effect upon a right that is federally protected against private conduct (in that case interstate travel), the incidental effect does not bring the defendants within the purview of the federal conspiracy statute. Citing *Carpenter v. Scott*, 463 U.S. 825, the *Bray* Court held that a private conspiracy must be 'aimed at' the right that is protected from deprivation by private conduct. Though addressing a plaintiff's civil charge under 42 U.S.C. 1985(3) against the

11

Case 3:22-cr-00327    Document 240    Filed 03/08/23    Page 11 of 18 PageID #: 689

defendants' private conspiracy to deprive them their right to abortion, the *Bray* Court observed that 18 U.S.C. § 241 is the criminal counterpart to § 1985(3), and applied the same legal principles to § 1985(3) that had been applied by the Court to 18 U.S.C. § 241. See, e.g., *United States v. Williams*, 341 U.S. 70 (1951).

In the instant case, the Indictment allegations make clear that the charged defendants planned and promoted an event aimed at opposing abortion. Under *Bray*, even before *Dobbs*, any incidental effect defendants had on a federally protected right would *not* be sufficient to bring their alleged private conspiracy within the scope of 18 U.S.C. § 241. For this reason, independent of *Dobbs*, the Indictment's charges of the seven defendants for violation of § 241 must be dismissed. And when the *Bray* ruling is seen in light of *Dobbs*, it becomes even clearer – an alleged conspiracy to stop criminal activity (abortion under *Dobbs*) and petition the state government to act against that criminal activity, even if it had some incidental effect on a federally protected right, is not sufficient to bring the private conspiracy under the scope of 18 U.S.C. § 241.

All eleven defendants are charged with criminal violation of 18 U.S.C. § 248. Abortion is the *raison d'etre* for that statute.[8] Subsection (e) of the statute defines "reproductive health services" as including services relating to the termination of a pregnancy. Consistently therewith, those terms were interpreted before *Dobbs* as applying to abortion. See, e.g., *Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002). But now, under *Dobbs*, the terms "reproductive health services" may not be interpreted as including abortion. As abortion may be criminalized by state law, access to abortion may be prohibited by state criminal law, and therefore access to a clinic for the

---

[8] See Testimony of Janet Reno, Attorney General, before the Committee on Labor and Human Resources, United States Senate, concerning S. 636, The Freedom of Access to Clinic Entrances Act of 1993 on May 12, 1993.
https://www.justice.gov/archive/ag/speeches/1993/05-12-1993-p.pdf

12

Case 3:22-cr-00327   Document 240   Filed 03/08/23   Page 12 of 18 PageID #: 690

purpose of an abortion is not a federal right protected against state prohibition. Otherwise, 18 U.S.C. § 248 could be applied criminally and civilly to punish every local police officer who blocks access to a clinic entrance as they go about enforcing Tennessee's criminal prohibition of abortion, the very conduct that *Dobbs* held was within the Constitutional police power of the states. Accordingly, persons acting to enforce state criminal laws against abortion (whether effecting an arrest, or serving a warrant, and blocking a clinic entrance in the process) may not be held as violating any person's Constitutional right to an abortion or inhibiting a person's access to reproductive health care services under 18 U.S.C. § 248. Under the new rule of *Dobbs*, it is now Constitutionally prohibited for the federal government to use 18 U.S.C. § 248 to criminally punish persons working to enforce a state law against abortion. It is likewise unconstitutional to apply 18 U.S.C. § 248 to punish persons exercising their First Amendment rights to speak, assemble, and petition the state, particularly the State of Tennessee, to enforce the criminal law against abortion. Assuming for purposes of this motion only that the defendants did some act that interfered with some person's attempt to obtain or provide an abortion,[9] they could not, under retroactive application of *Dobbs*, have violated 18 U.S.C. § 248, because the statutory language "reproductive health services" may no longer be interpreted as protecting abortion.

      The "anti-abortion event," which the Indictment alleges the defendants intended to pursue, was an exercise of the defendants' First Amendment rights to assemble, speak, publicize the event, and petition the government to act to prohibit abortion. The Indictment further shows that no defendant intended to interfere with any person's attempted access to legitimate reproductive health care (Boyd's child asked Patient A if she were "looking for the abortion

---

[9] The defendants dispute many of the facts alleged in the Indictment

clinic?"). Rather, the event pursued by the defendants is the type that has been long been upheld as protected First Amendment activity. See, for example, *Brown v. Louisiana*, 383 U.S. 131 (1966) where the Supreme Court described a "sit-in" demonstration as "dealing with an aspect of a basic Constitutional rights under the First and Fourteenth Amendments guaranteeing freedom of speech and of assembly, and the freedom to petition the Government for a redress of grievances." 383 U.S. at 141. There, the Supreme Court noted that an otherwise valid statute is unconstitutionally applied when applied in such a way as to punish Constitutionally protected activities. Id. at 142. In like manner, it would be an unconstitutional application of 18 U.S.C. §§ 241 and 248 if they were applied to punish the defendants' exercise of their First Amendment rights (speech, press, assembly, and petitioning the government).

## CONCLUSION

For all the foregoing reasons, the defendants respectfully moves this Court for an order dismissing the Indictment and all charges in this case.

Respectfully submitted,

**/s/ Steve C. Thornton**
Steve C. Thornton, Esq. (MSB #9216)
P.O. Box 16465
Jackson, MS 39236
(601) 982-0313
mail@lawlives.com
Attorney for Defendant Coleman Boyd

**/s/ G. Kerry Haymaker (by permission)**
G. KERRY HAYMAKER
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

14

        /s/ *Jodie A. Bell. (by permission)*
JODIE A. BELL
Tn.Sup.Ct.No. 18336
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615)244-1110/ (615) 956-4977
(615) 928-1901 (facsimile)
Attorney for Chester Gallagher

*/s/ William Conway (by permission)*
WILLIAM J. CONWAY
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 250-5363
wjconway@gmail.com
Attorney for Heather Idoni

*/s/ Robert Lynn Parris (by permission*
ROBERT L. PARRIS, ATTORNEY AT LAW
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(615) 490-8026
rlp@robertparrisattorney.com
Attorney for Defendant Calvin Zastrow

*/s/ Heather G. Parker (by permission)*
HEATHER G. PARKER
Evans Bulloch Parker PLLC
302 North Spring Street
PO Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
heatherparker@bfhelaw.com
Attorney for Defendant Caroline Davis

*/s/ Stephen M. Crampton (by permission)*
STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org
Attorney for Defendant Paul Vaughn

15

**/s/ *Manuel B. Russ (by permission)***
MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
Attorney for Defendant Dennis Green

**/s/ *David R. Heroux, P.C. (by permission)***
DAVID R. HEROUX, P.C.
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
heroux@tennesseedefense.com
Attorney for Defendant Eva Ed

**/s/ *David L. Cooper (by permission)***
DAVID L. COOPER
Law Office of David L. Cooper, P.C.
208 Third Avenue, N Suite 300
Nashville, TN 37201
(615) 256-1008
dcooper@cooperlawfirm.com
Attorney for Defendant Eva Zastrow

**/s/ *Rayburn McGowan, Jr. (by permission)***
RAYBURN McGOWAN, Jr.
8005 Church Street East, Suite 219
Brentwood, TN 37207
(615) 244-7070
mcgowanrayburnjr@bellsouth.net
Attorney for Defendant James Zastrow

**/s/ *Leonard E. Lucas, III (by permission)***
LEONARD E. LUCAS, III
The Law Firm of Leonard Earl Lucas
315 Deadrick St, Suite 1550
Nashville, TN 37238
(301) 204-6498
leonard.lucas@lellawfirm.com
Attorney for Defendant Paul Place

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Motion to Continue was filed electronically and served on the following by the EF/CME electronic filing system:

JODIE A. BELL
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615)244-1110/ (615) 956-4977
(615) 928-1901 (facsimile)
Attorney for Chester Gallagher

WILLIAM J. CONWAY
William J. Conway, Esq. P.C.
214 Second Avenue North, Suite 208
Nashville, TN 37201
(615) 260-5364
wjconway@gmail.com
Attorney for Defendant Heather Idoni

ROBERT LYNN PARRIS
Robert L. Parris, Attorney at Law
200 Jefferson Avenue, Suite 1500
Memphis, TN 38103
(615) 490-8026
rlp@robertparrisattorney.com
Attorney for Defendant Calvin Zastrow

G. KERRY HAYMAKER
Haymaker & Heroux, P.C.
545 Mainstream Drive. Suite 420
Nashville, TN 37228
(615) 250-0050
haymaker@tennesseedefense.com
Attorney for Defendant Coleman Boyd

HEATHER G. PARKER
Evans Bulloch Parker PLLC
302 North Spring Street
PO Box 398
Murfreesboro, TN 37133-0398
(615) 896-4154
heatherparker@bfhelaw.com
Attorney for Defendant Caroline Davis

LARRY LAMONT CRAIN
5214 Maryland Way, Suite 402
Brentwood, TN 37207
(615) 376-2600
larry@crainlaw.legal
Attorney for Defendant Paul Vaughn

STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS 38803
662-255-9439
scrampton@thomasmoresociety.org
Attorney for Defendant Paul Vaughn

MANUEL B. RUSS
340 21st Avenue North
Nashville, TN 37203
(615) 329-1919
russben@gmail.com
Attorney for Defendant Dennis Green

DAVID R. HEROUX, P.C.
Haymaker & Heroux, P.C.
545 Mainstream Drive, Suite 420
Nashville, TN 37228
(615) 250-0050
heroux@tennesseedefense.com
Attorney for Defendant Eva Edl

DAVID L. COOPER
Law Office of David L. Cooper, P.C.
208 Third Avenue, N Suite 300
Nashville, TN 37201
(615) 256-1008
dcooper@cooperlawfirm.com
Attorney for Defendant Eva Zastrow

RAYBURN McGOWAN, Jr.
8005 Church Street East, Suite 219
Brentwood, TN 37207
(615) 244-7070
mcgowanrayburnjr@bellsouth.net
Attorney for Defendant James Zastrow

LEONARD E. LUCAS, III
The Law Firm of Leonard Earl Lucas
315 Deadrick St, Suite 1550
Nashville, TN 37238
(301) 204-6498
leonard.lucas@lellawfirm.com
Attorney for Defendant Paul Place

SANJAY PATEL
Department of Justice
150 M Street NE
Washington, DC 20002
(202) 598-1018
Sanjay.patel@usdoj.gov
Representing **USA** (*Plaintiff*)

AMANDA J. KLOPF
U.S. Attorney's Office (Nashville)
719 Church Street, Suite 3300
Nashville, TN 37203
(615) 736-5151
amanda.klopf@usdoj.gov
Representing **USA** (*Plaintiff*)

NIKHIL A. RAMNANEY
Department of Justice
150 M Street NE
Washington, DC 20002
(202) 598-1018
nikhil.ramnaney@usdoj.gov
Representing **USA** (*Plaintiff*)

This the  8th  day of March 2023.

/s/ Steve C. Thornton
STEVE C. THORNTON